UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Henry L. Farrin, Jr.</u>

　　v.　　　　　　　　　　　　　　　　Civil No. 15-cv-102-LM
　　　　　　　　　　　　　　　　　　Opinion No. 2016 DNH 178
<u>Nationstar Mortgage LLC</u>


**O R D E R**

Henry Farrin brings suit alleging that Nationstar Mortgage
LLC ("Nationstar") violated New Hampshire's Unfair, Deceptive,
or Unreasonable Collection Practices Act (RSA 358-C); the Fair
Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b; and the Fair
Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e.
Farrin alleges that, while serving in Afghanistan, Nationstar
sent him several letters and left him numerous voicemails in an
effort to collect on his mortgage debt, which had been
discharged in bankruptcy.  Farrin also alleges that the efforts
to collect his discharged mortgage debt continued even after he
returned from Afghanistan, and that Nationstar unlawfully
accessed his credit report.  Nationstar moves for summary
judgment on all claims.  Farrin objects to the motion on the
grounds that material factual disputes preclude summary
judgment.

### Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015).  The court credits the evidence that supports the non-moving party and draws all reasonable inferences in his favor. Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016).  Therefore, in reviewing a motion for summary judgment, the court's function is not "'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

### Background

On October 16, 2007, Henry Farrin obtained a loan of $229,900 and signed a note with Taylor, Ben & Whitaker Mortgage Co. as lender that was secured by a mortgage on his property in Epsom, New Hampshire.  A second lien was recorded on the property in 2008 by Robert and Jerelyn Hill for $143,582.

2

By 2010, Farrin had experienced personal and financial difficulties and was unable to make the mortgage payments.  He unsuccessfully sought a modification of the loan from Ocwen Loan Servicing, LLC.  He then vacated the property in March 2010 and surrendered the property to Ocwen in October 2010.  Ocwen changed the locks on the house and put a notice in the window.[1]  Ocwen did not foreclose on the mortgage.

On February 7, 2012, Farrin filed for bankruptcy under Chapter 7.  He received a discharge on June 6, 2012.[2]  In December 2012, Ocwen asked Farrin to waive his rights under the

_____

[1] Farrin does not provide any explanation of the content of the notice.

[2] The discharge operates to discharge Farrin's personal liability on the note, but does not affect the lender's title interest in the property.  The lender retains the right to foreclose on the mortgaged property despite the discharge of the debtor's liability on the note.  In re Ladebush, Bk. No. 11-10763-JMD, 2016 WL 675580, at *7 (Bankr. D.N.H. Feb. 18, 2016) (citing Johnson v. Home State Bank, 501 U.S. 78, 83 (1991), and Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991)).

The distinction is that while personal liability for the note is discharged in bankruptcy, the lender may recover the deficiency due on a mortgage loan through an action in rem against the debtor under the mortgage, that is by foreclosure.  Summers v. Fin. Freedom Acquisition LLC, 807 F.3d 351, 357 (1st Cir. 2015); In re Canning, 706 F.3d 64, 69 (1st Cir. 2013); Worrall v. Fed. Nat'l Mortg. Ass'n, No. 13-cv-330-JD, 2013 WL 6095119, at *6 (D.N.H. Nov. 20, 2013).  The debtor may eliminate the mortgage by surrendering the mortgaged property to the lender.  Canning, 706 F.3d at 69-70.  The lender is not required to accept the surrender but cannot use the refusal as a subterfuge to coerce full payment of the loan from the debtor.  Id.

Servicemembers Civil Relief Act ("SCRA") and to consent to foreclosure.[3]  In response, Farrin offered Ocwen a deed to the property in lieu of a foreclosure.  Ocwen did not accept a deed in lieu of a foreclosure because of the Hills' lien on the property.  Ocwen apparently made no further efforts to resolve the foreclosure issue.

Since 2007, Farrin has served as the supply sergeant for medevac units in the New Hampshire National Guard.  In April 2013, Farrin was deployed to Afghanistan; he returned in January 2014.

On May 16, 2013, while Farrin was in Afghanistan, Nationstar became the servicer on Farrin's mortgage.  Nationstar sent Farrin a letter on May 31, 2013, to inform him of the change in servicers.  Thereafter and until June 2015, Nationstar sent Farrin monthly statements of his mortgage account, which included disclaimers that the statement was not intended as an attempt to collect a discharged debt.  Nationstar also sent

---

[3] The SCRA "provides foreclosure protections to servicemembers."  JPMorgan Chase Bank, N.A. v. Healey, No. 12-11922-JCB, 2014 WL 1348033, at *1 (D. Mass. Apr. 2, 2014). "Specifically, the SCRA provides that a 'sale, foreclosure, or seizure of property for a breach of an obligation' conducted while the party is in the military or during a designated period thereafter 'shall not be valid ... except ... (1) upon a court order granted before such sale, foreclosure, or seizure; or (2) if made pursuant to an agreement [between the parties].'"  Id. (quoting 50 U.S.C. § 3953(c)).

Farrin other correspondence about contact information at
Nationstar, insurance on the property, foreclosure options, tax
statements, and notices about the SCRA.  Some of the notices
included disclaimers stating that the notice was an attempt to
collect a debt unless the debt had been discharged in bankruptcy
and then the notice was for informational purposes only.

     In January 2014, when Farrin returned from Afghanistan, he
found "tons" of messages on his cell phone from Nationstar that
stated the call was an attempt to collect a debt.  Nationstar's
records show that the calls were for collection purposes.
Nationstar made a total of ninety-nine calls to Farrin's cell
phone, called his office telephone fifty times, and sent him
thirty letters.[4]  He told Nationstar to stop contacting him, but
the communications continued.  Farrin believed that Nationstar
was trying to collect the outstanding balance on the loan from
him, despite the bankruptcy discharge.

     On July 31, 2014, Nationstar obtained Farrin's consumer
credit report.  Nationstar characterizes its action as a "soft
pull" of credit information, which allows it to access certain
information, such as Farrin's current and former address and
whether he is in the military, but does not become public or

---

     [4] Nationstar disputes that the calls were for the purpose of
collecting a debt and points to Farrin's deposition testimony
about the calls in which Farrin said he could not remember if
anyone told him he owed Nationstar money during the calls.

negatively impact Farrin's credit.  Nationstar asserts that it obtained Farrin's credit report for "account review purposes."

On March 25, 2015, Farrin brought suit against Nationstar. He alleges that Nationstar's actions, including the telephone calls and written communications, violated RSA 358-C, the FDCPA, and FCRA.

## Discussion

Nationstar moves for summary judgment on all claims.  It asserts that that neither the FDCPA nor RSA 358-C prohibits its communications with Farrin and that a portion of Farrin's FDCPA claim is time barred.  Nationstar further contends that, because it obtained Farrin's credit reports for a permissible purpose, it did not violate FCRA.  Farrin objects on all grounds but does not address the statute of limitations argument.[5]

---

[5] Nationstar complains that Farrin's objection did not comply with the factual statement requirement under Local Rule 56.1 and exceeded the page limit under Local Rule 7.1(a)(3).  While Nationstar is correct that Farrin's objection fails to incorporate a factual statement and his filings exceed the page limit, the court will consider Farrin's filings despite his failure to comply with the local rules.  See LR 1.3(b).  Farrin is put on notice that the local rules, including page limits, apply in this case.

A.   Mays Declaration

Nationstar submitted two declarations from O.E. "Gene"
Mays, II, one in support of its motion for summary judgment, see
doc. no. 20-2 ("first Mays declaration") and one in support of
its reply.   See doc. no. 24-2 ("second Mays declaration").
Farrin contends that the court should disregard both
declarations because they are based on "information and belief"
and not on personal knowledge.   He also argues that the court
should disregard the first Mays declaration for the additional
reason that it conflicts with Mays's deposition testimony.

The court considers both declarations in ruling on
Nationstar's motion for summary judgment.   Although both
declarations conclude with the statement that the declaration is
true to the best of Mays's "information and belief," both
specifically state that the information in the declarations is
based on Mays's personal knowledge.   Therefore, the declarations
are acceptable.   See HMC Assets, LLC v. Conley, No. CV 14-10321-
MBB, 2016 WL 4443152, at *2 (D. Mass. Aug. 22, 2016); Rios Colon
v. United States, 928 F. Supp. 2d 388, 391 (D.P.R. 2012).

Farrin also argues that the first Mays declaration
conflicts with his deposition testimony and, therefore, should
be disregarded as a "sham."   Specifically, Farrin notes that
Mays testified at his deposition that Nationstar pulled Farrin's
credit report for "skip tracing" purposes, but stated in his

7

declaration that Nationstar pulled the report for "account review purposes."  Farrin has not explained why Mays's statement in his declaration conflicts with his deposition testimony, rather than "merely explains, or amplifies upon" the testimony. Gillen v. Fallon Ambulance Serv., 283 F.3d 11, 26 (1st Cir. 2002).  Therefore, the court considers both declarations.

B.   FDCPA

Nationstar first argues that some of its communications to Farrin, those that occurred before March 25, 2014, cannot be considered for purposes of the FDCPA claim because they are barred by the one-year statute of limitations.  See 15 U.S.C § 1692k(d).  Farrin failed to respond to the limitations defense except to say in his surreply that he "did not and does not waive claims for FDCPA violations prior to March 25, 2014." Doc. no. 26 at 2.  Nationstar also challenges the FDCPA claim on the merits.

1.   Statute of Limitations

Under the FDCPA, suit must be filed "within one year from the date on which the violation occurs."  § 1692k(d); McCarthy v. WPB Partners, LLC, No. 16-cv-081-LM, 2016 WL 4014581, at *7 (D.N.H. July 26, 2016).  An FDCPA claim arising from collection letters may accrue on the date when the letter was mailed or

received. Simard v. LVNV Funding, LLC, No. 10-11009-NMG, 2011 WL 4543956, at *3-4 (D. Mass. Sept. 9, 2011).

Farrin makes no argument of any kind to avoid the one-year limitation period. Because his complaint was filed on March 25, 2015, communications before March 25, 2014, cannot be considered for purposes of the FDCPA claim.[6]

### 2. Violation of the FDCPA

To succeed on a claim under the FDCPA, a plaintiff must show that "'(1) [he] was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA.'" Jones v. Experian Information Solutions, No. 14-10218-GAO, 2016 WL 3945094, at *3 (D. Mass. July 19, 2016) (quoting Rhodes v. Ocwen Loan

---

[6] Farrin does not contend in his objection or surreply that Nationstar's actions constitute a course of conduct. See Devlin v. Law Offices of Howard Lee Schiff, P.C., No. 11-11902-JGD, 2012 WL 4469139, at *6 (D. Mass. Sept. 25, 2012) ("District courts are not of a single view as to how the one-year statute of limitations for the FDCPA applies to a course of conduct, some of which occurred within the limitations period and some of which preceded it." (internal quotation marks omitted)). Because Farrin does not advance that argument in his objection or surreply, the court does not address it here. See Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) (The First Circuit has "emphasized that judges are not obligated to do a party's work for him, 'searching sua sponte for issues that may be lurking in the penumbra of the motion papers.'" (quoting United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992))).

Servicing, LLC, 44 F. Supp. 3d 137, 141 (D. Mass. 2014)).
Farrin asserts that Nationstar violated the FDCPA by asserting
in communications with him that he owed a debt based on his
mortgage loan that had been discharged in bankruptcy.[7]

Nationstar argues that the disclaimers included in its
correspondence with Farrin preclude his FDCPA claim because the
disclaimers notified Farrin that Nationstar was not collecting a
debt.[8]  The disclaimers on which Nationstar relies appear in
different forms.

For example, Nationstar sent Farrin monthly "Mortgage Loan
Statements" that listed the address of the mortgaged property,
provided an "Explanation of Amounts Payable" with an "Amount
Due" by a certain date, and provided the interest rate and the
principal balance.  Under a heading of "Important Messages," was
the following:

> This statement is sent for informational purposes only
> and is not intended as an attempt to collect, assess,
> or recover a discharged debt from you, or as a, [sic]
> or demand for payment from, any individual protected
> by the United States Bankruptcy Code.  If this account
> is active or has been discharged in a bankruptcy
> proceeding, be advised this communication is for

---

[7] Although Farrin does not cite the provision of the FDCPA
that Nationstar violated, he appears to refer to § 1692e(2)(A).
See, e.g., Lannan v. Levy & White, --- F. Supp. 3d ---, 2016 WL
2937455, at *7 (D. Mass. May 11, 2016).

[8] To the extent Nationstar is attempting to argue that it did
not violate the FDCPA because it was required to send certain
communications to Farrin under the SCRA, its theory is far from
clear.

> informational purposes and is not an attempt to
> collect a debt.  Please note, however Nationstar
> reserves the right to exercise its legal rights,
> including but not limited to foreclosure of its lien
> interest, only against the property securing the
> original obligation.

The statement provided a number to call to discontinue the

statements.  At the bottom of the statement, however, is a

payment slip that directs Farrin to detach and "Return with your

Payment."  It states the total amount due and provides space to

indicate the payment to be made.

Nationstar also sent "point of contact" letters to Farrin

to assist him "with the various workout options that may be

available" and to assist with questions about his "loan status."

The letters listed a person, address, and telephone number.  The

following statement appears at the end of each letter:

> If this account is active or has been discharged in a
> bankruptcy proceeding, be advised this communication
> is for informational purposes only and not an attempt
> to collect a debt.  Please note, however, we reserve
> the right to exercise the legal rights only against
> the property securing the original obligation.

Additionally, Nationstar sent Farrin five notices for

foreclosure prevention that began by directing Farrin to "Act

Now" to contact Nationstar about foreclosure prevention options.

The notices list two options – to stay in the home and make

mortgage payments or to leave the home.  At that point, however,

Farrin had already left the home and had offered a deed in lieu

of foreclosure.  The notices provide a deadline, telling Farrin

he "must respond" by the date provided.  At the bottom of each notice in smaller print is the following statement:

> This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if this debt is involved in a bankruptcy or has been discharged in a bankruptcy proceeding, this communication is not an attempt to collect a debt against you and any information obtained or given will be for informational purposes only.

Nationstar contends that the disclaimers in its communications effectively notified Farrin that the communications were not for debt collection.  In support, Nationstar argues that the validity of the disclaimers was upheld in LaCourse v. Ocwen Loan Servicing, LLC, No. 14-cv-013-LM, 2015 WL 1565250, at *9-10 (D.N.H. Apr. 7, 2015).

In LaCourse, however, Ocwen sent only two letters after receiving notice that the plaintiffs were represented by counsel and those letters were in response to the plaintiffs' requests for information from Ocwen.  Id. at *10.  In that context, the disclaimer in each letter was sufficient to avoid being a communication in connection with the collection of a debt in violation of the FDCPA.  Id.

Here, Farrin represents and Nationstar does not dispute that it sent many letters and notices and made many calls to Farrin about the amount of the outstanding loan.  Nationstar has not shown that the number of communications after March 24,

2014, is significantly reduced compared to the total.[9]
Nationstar does not provide any facts to show that Farrin
requested those communications from Nationstar.  In fact, the
record shows that Farrin demanded that Nationstar stop
contacting him.

Under these circumstances, the effectiveness of
Nationstar's disclaimers cannot be determined as a matter of
law.  Other courts have concluded that statements and notices
about loans and amounts due, despite similar disclaimers, raise
jury questions as to whether the communications were in
"connection with the collection of any debt" under the FDCPA.[10]
See, e.g., Prindle v. Carrington Mortg. Servs., LLC, No. 3:13-
cv-1349-J-34PDB, 2016 WL 4369424, at *15 (M.D. Fl. Aug. 16,

---

[9] Nationstar admits that it sent monthly statements and
several other types of correspondence until June 2015.  Although
the record does not contain a precise factual showing as to
numbers, it appears that there were a significant number of
communications.

[10] Nationstar argues that courts which have found similar
disclaimers insufficient were applying the "least sophisticated
consumer" standard rather than the "unsophisticated consumer"
standard used by the First Circuit.  Nationstar, however, has
not sufficiently explained the material differences between the
standards, and courts in the First Circuit have found little or
no distinction between the two standards.  See In re Murray, 552
B.R. 1, 4-5 (Bankr. D. Mass 2016); Laccinole v. Assad, No. 14-
404 S, 2016 WL 868511, at *5 (D.R.I. Mar. 7, 2016); Forcier v.
Creditors Specialty Serv., Inc., No. 13-cv-444-LM, 2014 WL
6473043, at *5 (D.N.H. Nov. 17, 2014).  The Supreme Court has
not addressed the distinction, if one exists.  See Sheriff v.
Gillie, 136 S. Ct. 1594, 1602 n.6 (2016).

2016); Green v. Specialized Loan Servicing, LLC, No. 15-cv-513-jdp, 2016 WL 3963255, at *4-5 (W.D. Wisc. July 21, 2016); Radney v. Bayview Loan Servicing, LLC, No. 15-cv-9380, 2016 WL 3551677, at *3-4 (N.D. Ill. June 30, 2016).   Therefore, Nationstar has not shown that it is entitled to summary judgment on the FDCPA claim, except as to communications that occurred prior to March 25, 2014, which are excluded from the claim.

### C.   RSA 358-C

Under RSA 358-C, "[n]o debt collector shall collect or attempt to collect a debt in an unfair, deceptive or unreasonable manner as defined in this chapter."   RSA 358-C:2. Farrin contends that Nationstar violated RSA 358-C:2 by claiming that Farrin still owed the discharged debt and might be liable for additional fees.   See RSA 358-C:3, VII & VIII.   In support of summary judgment, Nationstar argues that because of the disclaimers in its communications with Farrin, those communications did not contain any false representations about the debt or fees.

Because RSA 358-C is the state analog of the FDCPA and New Hampshire has little case law addressing the statute, FDCPA cases are used to analyze claims under RSA 358-C.   Dionne v. Fed. Nat'l Mortg. Ass'n, No. 15-cv-056-LM, 2016 WL 3264344, at *9 (D.N.H. June 14, 2016).   In asserting that it is entitled to

14

summary judgment on Farrin's UDUCPA claim, Nationstar relies on the same arguments it made in regard to its FDCPA claim.  See doc. no. 20-1 at 24.  For the reasons stated above, those arguments are unavailing.

Nationstar also relies on Pruden v. CitiMortgage, Inc., No. 12-cv-452-LM, 2014 WL 2142155 (D.N.H. May 23, 2014), in which the debtor and lender entered into a forbearance agreement.  The agreement provided that the debtor would continue to receive collection letters, which could be disregarded as long as the forbearance payments were current.  Id. at *14.  The court concluded that the agreement provided sufficient warning of the collection letters to preclude liability under RSA 358-C:3, VII.

Unlike the parties in Pruden, Farrin and Nationstar did not enter a forbearance agreement.  Instead, Nationstar relies on the disclaimers in its communications with Farrin to avoid the misrepresentation charges.  Given the obvious differences between a forbearance agreement and the various disclaimers in Nationstar's communications, Pruden does not support Nationstar's position.

In this case, the number of calls, notices, and letters and the content of those communications show that a material factual dispute exists as to whether Nationstar's communications were misrepresentations "of the character, extent or amount of the debt" or representations of increases in the debt due to fees in

15

violation of RSA 358-C:3, VII or VIII.  Therefore, Nationstar is
not entitled to summary judgment on the RSA 358-C claim.

    D.   <u>FCRA</u>

    Nationstar contends that Farrin cannot show a violation of
FCRA, and, even if Farrin could show a violation, he cannot show
that any such violation was willful.[11]  In support, Nationstar
argues that it had a permissible purpose to obtain Farrin's
credit report under FCRA.

    Under FCRA,

> [a] person shall not use or obtain a consumer report
> for any purpose unless – (1) the consumer report is
> obtained for a purpose for which the consumer report
> is authorized to be furnished under this section; and
> (2) the purpose is certified in accordance with
> section 1681e of this title by a prospective user of
> the report through a general or specific
> certification.

§ 1681b(f).  A permissible purpose to obtain a report includes
when the person "intends to use the information in connection
with a credit transaction involving the consumer on whom the
information is to be furnished . . . [for] review or collection
of an account of, the consumer."  § 1681b(a)(3)(A).  The court
must determine whether, viewing the facts in the light most
favorable to Farrin, there is a material factual dispute both as

---

[11] Farrin alleges that Nationstar willfully violated FCRA in
violation of 15 U.S.C. § 1681n.  He does not allege that
Nationstar negligently violated FCRA under 15 U.S.C. § 1681o.

to whether Nationstar had a permissible purpose to obtain
Farrin's credit report under FCRA and, if not, whether
Nationstar willfully violated FCRA.  See, e.g., Murray v.
Indymac Bank, F.S.B., No. 04 C 7669, 2005 WL 1866043, at *3
(N.D. Ill. June 13, 2005) (noting that a court should analyze
separately whether a defendant violated FCRA and whether there
is sufficient evidence of negligence or willfulness).

    1.  Violation of FCRA

    Nationstar argues that it had a permissible purpose to
obtain Farrin's credit report for several reasons, including
that it properly obtained Farrin's credit information as part of
its review "of an account of . . . the consumer" as allowed
under § 1681b(a)(3)(A).  Farrin argues that Nationstar did not
have a permissible purpose to obtain his credit report under
that section of FCRA.

    Whether a defendant may permissibly obtain a consumer's
credit report under § 1681b(a)(3)(A) after a bankruptcy
discharge depends on the specific circumstances of each case.
Compare Radney, 2016 WL 3551677, at *4 (holding that defendant
entitled to access plaintiff's credit report after bankruptcy
discharge where plaintiff had not yet surrendered possession of
the property and foreclosure proceedings were still ongoing at
the time of the credit pull) with Barton v. Ocwen Loan

17

Servicing, LLC, Civ. No. 12-162 (MJD/JJG), 2013 WL 5781324, at
*4-5 (D. Minn. Oct. 25, 2013) (holding that defendant not
entitled to access plaintiff's credit report where defendant
knew of discharge and had been given the name of borrower's
bankruptcy attorney to verify the discharge).  Even if
Nationstar accessed Farrin's credit report for an impermissible
purpose, the court must still determine whether a genuine issue
of material fact exists regarding whether Nationstar willfully
violated FCRA.  Because the record evidence shows that
Nationstar did not willfully violate FCRA, the court assumes
without deciding that a material factual dispute exists as to
whether Nationstar obtained Farrin's credit report for an
impermissible purpose.[12]

## 2.   Willful Violation

   "Any person who willfully fails to comply with any
requirement imposed under this subchapter with respect to any
consumer is liable to that consumer" for damages, costs, and
attorneys' fees as provided in the statute.  § 1681n(a); Spokeo,
Inc. v. Robins, 136 S. Ct. 1540, 1545 (2016).  Willful

---

[12] Nationstar also asserts that it had a right to obtain
Farrin's credit report under §§ 1681b(a)(2) and 1681b(a)(3)(F).
Because the parties focus their arguments as to willfulness on
whether Nationstar had the right to obtain Farrin's credit
report for account review purposes under § 1681b(a)(3)(A), the
court focuses its willfulness analysis on that section of FCRA.

violations include both intentional acts and those "taken in 'reckless disregard' of the statute." Fryer v. A.S.A.P. Fire & Safety Corp., Inc., 658 F.3d 85, 91 (1st Cir. 2011) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007)). Recklessness is an objective standard, and a company acts in reckless disregard of the statute if "the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69. Even though a company's conduct may constitute a violation of FCRA, it cannot be a willful violation unless the conduct is "objectively unreasonable." Id. at 70. "So long as the conduct adopted by the company 'could reasonably have found support in the courts,' no willful violation exists and the reporting agency is entitled to summary judgment as a matter of law." Sheldon v. Experian Info. Solutions, Inc., No. 08-5193, 2010 WL 3768362, at *4 (E.D. Pa. Sept. 28, 2010) (quoting Safeco, 551 U.S. at 70 n.20).

Nationstar contends that Farrin's account remained open for purposes of § 1681b(a)(3)(A), despite his discharge and surrender of the property, because Farrin had an ongoing relationship with Nationstar. In support, Nationstar states that Farrin remained the title holder of the property, had offered a deed in lieu of foreclosure, had not waived his rights

under the SCRA, and refused to verify identifying information.
Nationstar also states that it needed the credit report for
"skip tracing" to verify Farrin's address and to determine his
military status for purposes of the SCRA.  Nationstar contends
that, therefore, it was permitted to do an account review under
§ 1681b(a)(3)(A) and obtained Farrin's credit report for a
permissible purpose.

Nationstar contends that even if it was incorrect and it
did not have a permissible purpose to obtain Farrin's credit
report for an account review under § 1681b(a)(3)(A), its
interpretation of the statute was not objectively unreasonable
and, therefore, it did not recklessly disregard FCRA when it
obtained Farrin's credit report.[13]  In support, Nationstar
asserts that its interpretation of the statute comports with the
interpretations by the courts in Saumweber v. Green Tree
Servicing, LLC, No. 13-cv-03628 (SRN/SER), 2015 WL 2381131 (D.
Minn. May 19, 2015), Germain v. Bank of Am., N.A., No. 13-cv-
676-bbc, 2014 WL 5802018 (W.D. Wisc. Nov. 7, 2014), and Levine
v. World Fin. Network Nat'l Bank, 554 F.3d 1314 (11th Cir.
2009); that no circuit court has found to the contrary; and that

---

[13] Farrin contends that Nationstar willfully violated FCRA
because it acted in reckless disregard of the statute, not
because it intentionally violated the statute.

the Federal Trade Commission has not issued guidance to support Farrin's position.

In response, Farrin argues that Nationstar's interpretation of § 1681b(a)(3)(A) was objectively unreasonable.  Farrin argues that he did not have a "credit relationship" with Nationstar at the time it obtained his credit report, which is a necessary prerequisite for Nationstar to review Farrin's account.  Farrin also argues that Saumweber and Germain do not support Nationstar's interpretation and that the law has developed since Levine.

### a.  Credit Transaction

Farrin notes that § 1681b(a)(3)(A) provides that a person may obtain a consumer report only when he does so "in connection with a credit transaction involving the consumer."  He argues that once his mortgage was discharged in bankruptcy, the parties no longer had a credit relationship and, therefore, Nationstar's act of obtaining his credit report was not done in connection with a credit transaction involving a consumer.

In support, Farrin cites Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 674 (9th Cir. 2010).  In Pintos, the Ninth Circuit addressed whether the defendant had obtained the plaintiff's credit report as a result of "a credit transaction involving the consumer" under § 1681b(a)(3)(A).  The court noted that the

21

"credit transaction" at issue arose from a towing company that
had towed the plaintiff's car, sold it without her permission,
and then authorized the defendant to obtain the plaintiff's
credit report to collect on a deficiency claim arising out of
charges for towing and impounding the plaintiff's car.  The
court held that the defendant did not have a permissible purpose
to obtain the plaintiff's credit report under § 1681b(a)(3)(A)
because the credit transaction at issue did not involve the
plaintiff.  The court reasoned that the claim against the
plaintiff "did not result from a transaction initiated by" the
plaintiff and, therefore, did not "involve" her for purposes of
FCRA.  Id. at 676.

     Here, however, Farrin voluntarily entered into the credit
transaction at issue, i.e., his mortgage loan.  The factual
circumstances in Pintos are "far different" from the situation
in which a plaintiff "voluntarily entered into mortgage loans
and then failed to make payments." Germain, 2014 WL 5802018, at
*5 (distinguishing Pintos).  To the extent Farrin argues that
his bankruptcy discharge terminated the parties' credit
relationship, he offers no case law to support that assertion.
Indeed, the only court that has directly confronted that
question decided it in favor of Nationstar's position here, and
specifically held that a discharge does not, by itself, end the

credit relationship between a borrower and a lender.  Id. at *5-6.

Therefore, Farrin's argument concerning the lack of a credit relationship between the parties is without merit.  Even if it had merit, however, Nationstar's belief that it still had a credit relationship with Farrin after his bankruptcy discharge, particularly in light of Germain, cannot be described as objectively unreasonable.

### b.  Case Law

Nationstar cites two recent district court cases that hold that a defendant is entitled to access the plaintiff's credit report after a bankruptcy discharge.  See Saumweber, 2015 WL 2381131, at *3-5; Germain, 2014 WL 5802018, at *5-8.  It also relies on Levine as supporting a loan servicer's right to obtain a borrower's credit report even after the borrower's account was closed.  Nationstar argues that in light of this case law and the lack of authority to the contrary, its interpretation of § 1681b(a)(3)(A) was not objectively unreasonable and, therefore, it did not recklessly disregard FCRA when it obtained Farrin's credit report.  Farrin argues that it is objectively unreasonable to rely on Levine in light of subsequent district court opinions, and that Saumweber and Germain are distinguishable.

23

In Levine, the Eleventh Circuit upheld a finding of no willfulness where the defendant's act of selling the plaintiff's credit report occurred after the plaintiff had paid his balance and closed his account. The plaintiff argued that the defendant committed a willful violation of FCRA because there could be no permissible purpose to pull his credit report where his account was closed and there was no active account for the defendant to review. The court found the relevant language "ambiguous" on whether the statute "contains an absolute prohibition against the sale of credit reports to former creditors whose accounts are closed and paid in full." 554 F.3d at 1318 (internal citations and quotation marks omitted). The court further noted the lack of circuit authority or authoritative guidance to the contrary. See id.

The Eleventh Circuit decided Levine in 2009, and the Circuit has issued no decision since Levine calling its holding into question. Thus, Levine is still good law and Nationstar's reliance on it as support for a company's right to pull a consumer's credit report for purposes of reviewing both open and closed accounts is not objectively unreasonable.

There are two problems with Farrin's argument that the law has developed to the point where it would have been unreasonable for Nationstar to rely on Levine. First, as discussed, Levine is still good law. Second, Nationstar relies on more than just

24

Levine.  Nationstar relies on a line of recent district court
cases in the context of a post-discharge credit pull which stand
for the proposition that a discharge, by itself, is not enough
to render a company's post-discharge credit pull a violation of
FCRA.  See, e.g., Saumweber, 2015 WL 2381131, at *3-5 (holding
that post-discharge credit pull not FCRA violation where
plaintiff remained in possession of home and continued to make
payments); Germain, 2014 WL 5802018, at *5-8 (holding that post-
discharge credit pull not FCRA violation where plaintiff
remained in property and offered a deed in lieu of foreclosure).

Farrin points to district court cases in which the courts
held that defendants were not entitled to access plaintiff's
credit reports post-discharge under FCRA.  See Barton, 2013 WL
5781324, at *4-5; Godby v. Wells Fargo Bank, N.A., 599 F. Supp.
2d 934, 942 (S.D. Ohio 2008) (holding that defendant not
entitled to access plaintiff's credit report after discharge
where plaintiff's account was closed, and although plaintiff's
name was still on the title, plaintiff had surrendered her
rights to the property).  Although these cases support Farrin's
argument, they underscore that courts look to the circumstances
of each case to determine whether a defendant is entitled to
access a plaintiff's credit report after a bankruptcy discharge.

Here, it is undisputed that Farrin still held title to the
property and Nationstar remained the servicer.  While a jury may

25

conclude that Nationstar's post-discharge credit pull constitutes a FCRA violation, Nationstar's reliance on <u>Levine</u> and the post-discharge line of district court cases to conclude otherwise cannot be described as "objectively unreasonable."

The Supreme Court has made clear that where there is support in the case law for more than one reasonable interpretation, a defendant cannot be liable for a willful violation under FCRA for adopting one of those interpretations:

> Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator. Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been.

Safeco, 551 U.S. at 70 n.20

For these reasons, Nationstar is not liable for a willful violation of FCRA and is entitled to summary judgment on Count II.

**Conclusion**

For the foregoing reasons, defendant's motion for summary judgment (document no. 20) is granted as to Count II and as to the FDCPA claim in Count III to the extent it is based on

26

actions or conduct that occurred before March 25, 2014, and is otherwise denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 28, 2016

cc: Scott C. Borison, Esq.
    D. Kyle Deak, Esq.
    Peter A. Holland, Esq.
    John C. Lynch, Esq.
    Thomas J. Pappas, Esq.
    Roger B. Phillips, Esq.
    Kenneth Stout, Esq.